UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

**CAROLYN L. KRAMER,**

   **Plaintiff,**

v.                                                                          **Case No: 5:16-cv-576-Oc-18PRL**

**COMMISSIONER OF SOCIAL
SECURITY**

   **Defendant.**

### REPORT AND RECOMMENDATION[1]

Plaintiff, Carolyn L. Kramer, appeals the administrative decision denying her application for disability insurance benefits. (Tr. 14–28). In denying Plaintiff benefits, the Administrative Law Judge ("ALJ") determined that Plaintiff had the capacity to perform light work and simple repetitive tasks. (Tr. 20). Upon a review of the record, the memoranda, and the applicable law, I recommend that the ALJ's decision be affirmed.

**I.      BACKGROUND**

Plaintiff filed an application for disability benefits, alleging disability beginning October 2012. The claim was denied initially and upon reconsideration. At Plaintiff's request, a hearing was held, where both Plaintiff and a vocational expert ("VE") testified. The ALJ issued a notice of unfavorable decision, finding Plaintiff not disabled. (Tr. 14–28). Plaintiff's request for review

---

[1] Within 14 days after being served with a copy of the recommended disposition, a party may file written objections to the Report and Recommendation's factual findings and legal conclusions. *See* Fed. R. Civ. P. 72(b)(3); 28 U.S.C. § 636(b)(1)(B); Local Rule 6.02. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

was denied by the Appeals Council (Tr. 1–3), and Plaintiff initiated this action. (Doc. 1). The final decision of the Commissioner is ripe for review under 42 U.S.C. § 405(g).

At the time of the ALJ's decision, Plaintiff was thirty-nine years old. (Tr. 26). She has a high-school education and is able to communicate in English. (Tr. 27). Prior to the alleged onset of her disability, Plaintiff had worked for several years at a power plant where she performed various jobs such as industrial cleaner, office clerk, mechanic, and fire inspector. (Tr. 26, 40–41). Plaintiff left her job in February 2012 after she fainted while at work. (Tr. 40–41, 694–95). She fainted again a few days later while she was having her blood drawn and then a final time in May 2012 after pulling off to the side of the road while driving. (Tr. 700). She has not fainted since then although she claims to continue to experience regular spells of feeling dizzy and lightheaded. (Tr. 700).

Based on a review of the record, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia/chronic fatigue syndrome, degenerative disc disease, gastroesophageal reflux disease, obesity, anxiety, depression, and bipolar disorder. (Tr. 16). The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to: "perform light work as defined in 20 C.F.R. 404.1567(b) except she can lift and/or carry 20 pounds frequently and 10 pounds occasionally and cannot work on unprotected heights or perform commercial driving." (Tr. 20). In addition, the ALJ specified that Plaintiff "cannot work on unprotected heights or perform commercial driving." Finally, the ALJ determined that Plaintiff had the capacity to "perform simple repetitive tasks (i.e., tasks that can be learned in 20 days or less and performed over and over) and with only occasional interactions with others." (Tr. 20).

Based upon Plaintiff's RFC, the ALJ found that Plaintiff could not perform her previous work. (Tr. 26). However, the ALJ determined that there are jobs in significant numbers in the

national economy that Plaintiff can perform, such as a housekeeper, a clerical or warehouse checker, and a produce sorter. (Tr. 27).[2] Accordingly, the ALJ determined that Plaintiff is not disabled.

## II.     STANDARD OF REVIEW

A claimant is entitled to disability benefits when he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than twelve months. 42 U.S.C. §§416(i)(1), 423(d)(1)(A); 20 C.F.R. §404.1505(a).

The Commissioner has established a five-step sequential analysis for evaluating a claim of disability, set forth in the ALJ's decision. *See* 20 CFR §§ 404.1520(a), 416.920(a); *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The claimant, of course, bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987).

The scope of this Court's review is limited to a determination of whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). Indeed, the Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. §405(g). Substantial evidence is more than a scintilla—the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835,

---

[2] Additionally, the ALJ determined that there exists work in significant numbers in the national economy that Plaintiff could perform even if Plaintiff were further limited to "carrying 10 pounds occasionally and less than 10 pounds frequently and standing and waling [sic] for brief periods totaling no more than 2 hours in an 8-hour workday." (Tr. 28).

838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). Where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### III.   DISCUSSION

On appeal, Plaintiff contends that: (1) the ALJ failed to properly evaluate the opinion of Plaintiff's treating physician; and (2) the ALJ failed to adequately consider Plaintiff's subjective complaints in determining Plaintiff's RFC.

**A.   The ALJ properly evaluated the opinion of Plaintiff's treating physician.**

Plaintiff argues that the ALJ erred by failing to adequately evaluate and give proper weight to the opinion of Dr. Lakshmi Padala, who treated Plaintiff on four occasions. An examination of the ALJ's decision, however, shows that the ALJ considered Dr. Padala's opinion and articulated reasons, supported by substantial evidence, for partially disregarding it.

The ALJ must state with particularity the weight given to different medical opinions and the reasons therefor. *Winschel v Comm'r of Social Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). The opinions of treating physicians are entitled to substantial or considerable weight unless "good cause" is shown for disregarding them. *Crawford v. Comm'r of Soc. Sec.*, 363 F. 3d 1155, 1159 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir.1997)). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir.

2004). With good cause, an ALJ may disregard a treating physician's opinion, but he or she "must clearly articulate [the] reasons" for doing so. *Id*. at 1240–41. Section 404.1527(d) outlines factors that the ALJ considers in deciding the weight to give any medical opinion, including the nature and extent of the treatment relationship, and the consistency between the physician's opinion and the record.

On December 30, 2014, Dr. Padala completed a form entitled "Medical Opinion re: ability to do work-related activities (Physical)." (Tr. 618). On the form, Dr. Padala marked that Plaintiff can lift twenty pounds occasionally and ten pounds frequently but could only stand and walk for about two hours in an eight-hour day. (Tr. 618). Dr. Padala also advised that Plaintiff could not stoop, crouch, push, or pull and must avoid exposure to environmental hazards. (Tr. 618–19). The ALJ agreed with Dr. Padala's opinion as to Plaintiff's capacity to lift but disagreed with Dr. Padala's conclusions as to Plaintiff's limitations regarding standing, sitting, and performing postural activities (crouching, stooping, etc.). (Tr. 24). The ALJ based her decision to partially disregard Dr. Padala's opinion on the inconsistencies between Dr. Padala's opinion and Dr. Padala's own treatment records along with medical evidence from other sources. (Tr. 24).

Dr. Padala saw Plaintiff on four occasions: February 12, 2014, April 14, 2014, August 14, 2014, and August 26, 2014. (Tr. 567). During Plaintiff's visits to Dr. Padala, Plaintiff denied experiencing headaches or chest, neck, or abdominal pain, and although she experienced some pain in her knee and other joints, Dr. Padala noted that the pain was well controlled. (Tr. 573, 576–78). Dr. Padala's treatment notes consistently show that Plaintiff was in good health generally and all vital signs, heart, and breathing were normal. (Tr. 571, 574, 576–79). Plaintiff could walk normally and was not experiencing muscle weakness, loss of balance, or other neurological disorder. (Tr. 574, 576, 578).

In addition, the ALJ concluded that the medical evidence from other sources conflicted with Dr. Padala's opinion. For instance, the ALJ explained that records from Plaintiff's chiropractor show that Plaintiff reported low levels of pain and could perform most recreational activities with only mild limitations on her range of motion. (Tr. 367–76). Neurological examinations and other test conducted by Dr. Rachel Dolhun and the doctors at the Mayo Clinic all indicated Plaintiff had normal results and normal functioning. (Tr. 410, 416, 632). Tests of Plaintiff's heart and lungs were all normal. (Tr. 630, 749–56).

Plaintiff broadly asserts that "Substantial evidence, refutes the ALJ's findings," yet she fails to cite any such evidence that would conflict with the ALJ's decision. (Plaintiff's Memo at 19). Instead, Plaintiff relies on generic online explanations of the symptoms of Fibromyalgia without addressing any of the actual medical evidence related to Plaintiff's functional limitations. "[A] diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to establish disability]; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (internal quotation marks omitted).

In her decision, the ALJ discussed the conflict between Dr. Padala's opinion and Dr. Padala's own treatment notes and the additional medical evidence. Based on this discrepancy, the ALJ determined that Dr. Padala's opinion overstated Plaintiff's limitations and should be partially disregarded. Plaintiff has not met her burden of establishing that this conclusion was error. Thus, the ALJ's determination is due to be affirmed on this point. *See, e.g.*, *Hunter v. Soc. Sec. Comm'r*, 808 F. 3d 818, 823 (11th Cir. 2015) ("[The court] will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific justification for it.").

**B.     The ALJ properly evaluated Plaintiff's subjective symptoms.**

Next, Plaintiff argues that the ALJ failed to properly analyze her subjective complaints of pain. The ALJ determined that Plaintiff's subjective complaints were credible—that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (Tr. 21). The ALJ concluded, nonetheless, that the objective medical evidence did not support greater limitations than those provided in the RFC. (Tr. 21).

A plaintiff can establish disability through the claimant's own testimony as to the severity of her subjective symptoms, including symptoms of pain. *See Strickland v. Comm'r of Soc. Sec.*, 516 F. App'x 829, 831 (11th Cir. 2013). The ALJ must consider subjective complaints if the ALJ finds evidence of an underlying medical condition and either (1) objective medical evidence "confirms the severity of the alleged pain or symptoms arising from the underlying medical condition, or [2] evidence that the objectively-determined medical condition is of such a severity that it can reasonably be expected to give rise to the alleged pain or symptoms." *Id.* (citing *Foote v. Chater*, 67 F. 3d 1553, 1560 (11th Cir. 1995)).

If the record shows that the plaintiff has an underlying medical condition that could cause the plaintiff's subjective symptoms, the ALJ must then "evaluate the intensity and persistence of the symptoms in determining how they limit the claimant's capacity for work." *Id.* The ALJ should consider "all of the record, including the objective medical evidence, the claimant's history, and statements of the claimant and her doctors." *Id.* The ALJ may also consider the other factors established in 20 C.F.R. § 404.1529(c)(3). *Id.* at 832.

Here, Plaintiff's subjective complaints included pain, anxiety, and dizziness. (Tr. 21). The ALJ determined that Plaintiff's medically-determinable impairments could cause these subjective symptoms. (Tr. 21). The ALJ then reviewed the objective medical evidence and concluded that

despite Plaintiff's extensive medical history, none of the objective medical evidence established limitations beyond those accounted for in the RFC. (Tr. 21–24).

Regarding Plaintiff's subjective complaints of pain, records from Plaintiff's chiropractic exams showed that Plaintiff was responding well to treatment and "in very little pain now." (Tr. 367). Plaintiff's chiropractor reported that Plaintiff could engage "in the major but not all recreational activities" and could manage medium weights. (Tr. 368). In addition, the ALJ noted that Plaintiff's treatment for pain had been conservative, and Plaintiff was never referred to a specialist. (Tr. 24, 621–22, 675).

The ALJ also reviewed the objective medical evidence related to Plaintiff's complaints of anxiety. (Tr. 25–26). Plaintiff underwent a mental health evaluation in December 2014. (Tr. 614–17). The evaluator observed that while Plaintiff's mood and affect were "a little dysphoric and anxious," her behavior was otherwise appropriate, and her memory, attention span, and concentration were appropriate. (Tr. 615). An earlier mental-health exam at The Centers similarly concluded that while Plaintiff's mood was depressed, her behavior was otherwise appropriate. (Tr. 424–32). The ALJ also noted that Plaintiff had never been hospitalized for a mental impairment, and her treatment for mental-health issues was limited to three sporadic visits without follow-up consultations. (Tr. 25).

Finally, Plaintiff also claimed to suffer from dizziness and weakness in her muscles. The ALJ specifically noted in the RFC that Plaintiff "cannot work on unprotected heights or perform commercial driving." (Tr. 21). As discussed above, Plaintiff lost consciousness on at least three occasions in 2012. She claims to continue to experience spells of dizziness three to four times a week although she has not lost consciousness on any further occasions since 2012. (Tr. 21, 699–700). Extensive follow-up tests performed following Plaintiff's fainting episodes were normal and

revealed no underlying disorder. (Tr. 243–45, 327, 337, 632, 696). When Plaintiff was again evaluated in October 2012 for dizziness, fainting, and other neurological conditions, all of the objective medical testing was normal. (Tr. 408–22). An evaluation for epilepsy revealed normal results as well. (Tr. 632). None of the extensive testing related to Plaintiff's dizziness and fainting revealed any underlying cause.

The ALJ concluded, after considering all of the objective medical evidence along with Plaintiff's subjective complaints, that the evidence did not support greater limitations than those included in Plaintiff's RFC. (Tr. 21–24). In opposition to the ALJ's decision, Plaintiff's merely asserts, again without further support, that the ALJ's "lack of proper analysis of Plaintiff Kramer's credibility" requires reversal. (Plaintiff's Memo at 22). As in Plaintiff's previous argument, Plaintiff relies on her diagnosis of fibromyalgia/chronic fatigue syndrome, yet as the Eleventh Circuit has pointed out, "the mere existence of these impairments does not reveal the extent to which they limit [Plaintiff's] ability to work." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005). Plaintiff has not met her burden to establish that the ALJ erred in considering Plaintiff's subjective symptoms or to show that Plaintiff has greater functional limitations than those identified in the RFC.

## IV.  RECOMMENDATION

Accordingly, for the reasons stated above, it is **RECOMMENDED** that the ALJ'S decision should be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

**DONE and ORDERED** in Ocala, Florida on December 8, 2017.

PHILIP R. LAMMENS
United States Magistrate Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties